**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STANLEY COSTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0745** |
| **HOWARD PRINCE** | **SECTION "H"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    State Factual and Procedural Background

The petitioner, Stanley Coston ("Coston"), is a convicted inmate incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] On December 14, 1998, Coston was charged by bill of information in Orleans Parish with two counts of armed robbery, two counts of first degree

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

robbery, and one count of simple burglary of an inhabited dwelling.[3]  Coston entered a plea of not

guilty on December 16, 1998.[4]

The record reflects that Coston's charges arose from five separate incidents.[5]  The first

incident occurred on October 3, 1998 at 8:15 a.m., when Karla Zelaya[6] exited her apartment in the

3700 block of Camp Street in New Orleans.  A man riding a red bicycle approached her, exposed

a gun tucked in his waistband, and demanded her purse and keys.  After the man rode away with her

purse, she went to a neighbor's house and called the police.

Officer Edgar Steahle responded to Zelaya's call.  He questioned Zelaya, who was

distraught, and she provided a full physical description of the perpetrator and his clothing.  Officer

Steahle searched the neighboring area but did not locate the suspect.  Detective Sal Caronna

investigated the Zelaya robbery, and developed Coston as a suspect. On October 13, 1998, he

presented a photographic lineup to Zelaya, and she positively identified him as her assailant.

The second incident occurred on October 9, 1998, when Coston burglarized the home of

Casey Valadie at 3622 Constance Street in New Orleans.  The record does not contain more

descriptive details of this event because Coston later entered a plea of guilty to this charge.

The third incident occurred on October 9, 1998, at 8:30 a.m. as Kathleen Costello backed

her car out of her driveway in the 1000 block of Peniston Street in New Orleans.  She heard a loud

bang on the rear of her vehicle.  She looked back to investigate the noise, and she saw a man leaning

---

[3]St. Rec. Vol. 2 of 9, Bill of Information (6 pages), 12/14/98.

[4]St. Rec. Vol. 1 of 9, Minute Entry, 12/16/98.

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Coston*, 800 So.3d 907, 911-912 (La. App. 4 Cir. 2001); St. Rec. Vol. 5 of 9, 4 Cir. Opinion, 2000-KA-1132, pp. 2-4, 2/5/01.

[6]The record indicates that Zelaya married prior to trial and used the name Karla Zelaya Burman at trial.

over as if she had hit him with her vehicle.  She offered the man assistance and asked him his name and address, but the man demanded money and her car keys.  When she refused, the man shoved Costello into the car.  She sounded the horn, and the assailant raised his t-shirt as if reaching for a weapon.  Refusing to give the man her car keys, Costello surrendered about one hundred dollars to him, and he walked away.

Costello reported the incident to the police.  Detective Gerard Kuhn showed her a photographic lineup, but she did not identify her assailant in any of the photographs.  On October 13, 1998, Detective Kuhn, along with Detective Lisa Phillips, displayed a second photographic lineup to Costello, and she immediately identified Coston as the robber.

The fourth incident occurred on October 11, 1998, when Michael Triay was securing his son in his car, which was parked on Audubon Street in New Orleans.  A man on a bicycle stopped next to the Triay vehicle and indicated that he was armed.  The man ordered Triay to surrender his money or be shot.  After Triay gave the robber his money, the robber rode away on his bicycle.

Triay reported the incident to the police giving a physical and clothing description, including the plaid underwear worn by the robber.  Detective Louis Labat investigated the Triay armed robbery and developed Coston as a suspect.  On October 15, 1998, Triay identified Coston as the armed robber from a photographic lineup compiled by Officer Labat.

The fifth incident occurred on October 11, 1998, at 11:45 p.m. in the 4800 block of Baronne Street in New Orleans.  Officer Brian Warner responded to a robbery call made by the victim, Nicole Farkouh.  She  described her assailant and told Officer Warner that a man entered her home and demanded money.  She gave the man $23.00.  The man told her to accompany him upstairs, but she refused.  The man then indicated that he had a gun in his pants pocket.  When Farkouh asked to see

the weapon, the man fled. Farkouh subsequently identified Coston from a photographic lineup as the man who robbed her.

At 4:30 a.m. on October 13, 1998, Officer Vernell Brown and his partner saw Coston walking near the intersection of Chestnut and Upperline Streets, pushing a red bicycle. Officer Brown noticed that Coston fit the description of the suspect sought in connection with the rash of robberies in the Uptown area. Officer Brown stopped Coston, verified his identity, and arrested him on suspicion of armed robbery.

After Coston was arrested and read his rights, he gave a statement to Detective Kuhn in which he admitted that he robbed Costello and confessed to the burglary of an Uptown dwelling. Detectives Lisa Phillips and Walter Gifford executed a search warrant on Coston's home during which they seized several items of clothing, including a pair of plaid underwear, later identified by Triay as the one's worn by the man who robbed him.

Coston was tried before a jury on January 11 and 12, 2000 on all but the simple burglary charge.[7] He was found guilty of first degree robbery as to each of the four counts.[8] Thereafter, on March 10, 2000, the Trial Court sentenced Coston to serve 40 years in prison on each count concurrently and without benefit of parole, probation, or suspension of sentence.[9] The Court also denied Coston's motions for new trial and to reconsider the sentence.[10]

---

[7]St. Rec. Vol. 1 of 9, Trial Minutes (2 pages), 1/11/00; Trial Minutes (2 pages), 1/12/00; St. Rec. Vol. 4 of 9, Trial Transcript, p. 2, 1/12/00; Trial Transcript (continued), 1/12/00.

[8]St. Rec. Vol. 1 of 9, Trial Minutes (2 pages), 1/12/00; St. Rec. Vol. 2 of 9, Jury Verdicts (4 pages), 1/12/00.

[9]St. Rec. Vol. 1 of 9, Sentencing Minutes, 3/10/00; St. Rec. Vol. 4 of 9, Sentencing Transcript, 3/10/00.

[10]*Id.*; St. Rec. Vol. 2 of 9, Motion to Reconsider Sentence, 3/10/00; Motion for New Trial, 1/15/00; St. Rec. Vol. 1 of 9, Minute Entry, 1/18/00.

In the meantime, the State filed a multiple offender bill charging Coston as a third felony offender.[11]  At a hearing held March 20, 2000, the Court adjudicated Coston to be a second offender.[12]  After waiver of legal delays, the Court resentenced Coston on counts three and four to serve 40 years in prison at hard labor without benefit of parole, probation, or suspension of sentence and to run concurrently with the other sentences.[13]

At the same hearing, Coston also entered a plea of guilty to count two, simple burglary of an inhabited dwelling, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).[14]  The Court sentenced him to serve one year at hard labor without benefit of parole, probation, or suspension of sentence to run concurrently with the other sentences already imposed.

On direct appeal, Coston's appointed counsel raised four errors for review:[15] (1) the Trial Court erred when it failed to sua sponte sever the trials of the four offenses; (2) the Trial Court erred in denying the defense motion to suppress the identifications; (3) the Trial Court erred in failing to sua sponte order a mistrial when the prosecutor erroneously indicated that the defendant confessed to a certain offense; and (4) the sentence of 40 years was excessive.  The State also raised one issue

---

[11]St. Rec. Vol. 2 of 9, Multiple Bill, 2/8/00; St. Rec. Vol. 1 of 9, Minute Entry, 2/7/00.

[12]St. Rec. Vol. 1 of 9, Multiple Bill Hearing Minutes, 3/20/00; St. Rec. Vol. 4 of 9, Multiple Bill Hearing Transcript, 3/20/00.

[13]*Id.*

[14]*Id.*; St. Rec. Vol. 2 of 9, Waiver of Constitutional Rights Plea of Guilty Form, 3/21/00.  Under *Alford*, a criminal defendant can enter and a court can accept a plea of guilty in spite of the defendant's insistence that he is innocent.  *Alford*, 400 U.S. at 37.

[15]St. Rec. Vol. 5 of 8, Appeal Brief, 2000-KA-1132, p. 9, 10/18/00.

for appeal arguing that the Trial Court erred in adjudicating Coston to be a second offender instead of a third offender during the multiple bill proceeding.[16]

On September 5, 2001, the Louisiana Fourth Circuit affirmed Coston's convictions and sentences finding no merits to his arguments under errors one, two and four.[17]  The Court found that the third error was barred from review for the lack of a contemporaneous objection under LA. CODE CRIM. PROC. ANN. arts. 770, 771 and, alternatively, the claim was without merit.  The Court also found that the State's arguments had merit and determined that Coston should have been adjudicated a third felony offender.  The Court remanded the matter for Coston to be resentenced as a third offender on counts three and four.  The Louisiana Supreme Court denied Coston's subsequent writ application without stated reasons on October 4, 2002.[18]

Prior to that date, on July 2, 2002, Coston's trial counsel orally moved the Trial Court for a new trial on the multiple bill; counsel later followed that with a written motion.[19]  The Court denied the motion on September 24, 2002.  The record also shows that, on March 7, 2003, the State withdrew the multiple bill.[20]

On March 31, 2003, Coston submitted an application for post-conviction relief to the Trial Court in which he argued that he was denied effective assistance of counsel when his counsel (a) failed to file a motion to sever the charges and (b) failed to object to the prosecutor's improper

---

[16]St. Rec. Vol. 5 of 9, State's Appeal Brief, 00-KA-1132, 6/12/00.

[17]*Coston*, 800 So.2d at 907; St. Rec. Vol. 5 of 9, 4 Cir. Opinion, 2000-KA-1132, 2/5/01.

[18]*State v. Coston*, 826 So.2d 1115, 1115 (La. 2002); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2001-KO-2819, 10/4/02.

[19]St. Rec. Vol. 1 of 9, Minute Entry, 7/12/02; Minute Entry, 8/19/02; St. Rec. Vol. 2 of 9, Motion for New Trial and Recusal, 8/19/02.

[20]St. Rec. Vol. 1 of 9, Minute Entry, 3/7/03.

remark.[21]  Although the record does not contain a file-stamped copy of this application, according to Coston's verified state court pleading later filed with the Louisiana Supreme Court, the application for post-conviction relief was mailed by him on March 31, 2003, to the state trial court.[22] Lewis references this same application in his petition to this court, and the State acknowledges its submission in its opposition response.[23]  The Louisiana Supreme Court also deemed it to have been filed on March 31, 2003.[24]

Having received no ruling from the Trial Court, on November 17, 2003, Coston submitted an application for writ of mandamus to the Louisiana Fourth Circuit requesting an order to compel to the Trial Court to rule on his application for post-conviction relief.[25]  The Court denied the application because the record did not show that the application for post-conviction relief was filed in the Trial Court and because he failed to attach a copy of the pleading.[26]

After several attempts to contact the Trial Court to no avail, Coston submitted a second application for writ of mandamus with the Louisiana Fourth Circuit on October 12, 2004.[27]  The

---

[21]St. Rec. Vol. 9 of 9, Application for Post-Conviction Relief, dated 3/13/03.

[22]*Id.*; St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 06-KH-2358, pp.1, 4, 9/26/06; Inmate's Request for Legal/Indigent Mail, 3/13/03; Inmate Withdrawal Request, 3/31/03.

[23]Rec. Doc. No. 1, p.12; Rec. Doc. No. 11, p. 19.

[24]*State ex rel. Coston v. State*, 944 So.2d 1270, 1270 (La. 2006); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2006-KH-2358, 12/15/06.

[25]St. Rec. Vol. 9 of 9, 4 Cir. Writ Application, 2003-KH-2022, 11/18/03 (dated 11/17/03).

[26]St. Rec. Vol. 9 of 9, 4 Cir. Order, 2003-KH-2022, 12/11/03.

[27]St. Rec. Vol. 9 of 9, 4 Cir. Writ Application, 2004-K-1778, 10/12/04 (dated 10/6/04).

Court again denied the application, because the record did not show that the application for post-conviction relief was filed in the Trial Court and because he failed to attach a copy of the pleading.[28]

On November 16, 2004, Coston submitted his application for post-conviction relief to the Trial Court again arguing that he was denied effective assistance of counsel when his counsel (a) failed to file a motion to sever the charges and (b) failed to object to the prosecutor's improper remark or seek an admonition or mistrial.[29]

With no response from the Trial Court, on July 26, 2006, Coston filed an application for writ of mandamus with the Louisiana Fourth Circuit seeking a ruling from the Trial Court on his application for post-conviction relief.[30] The Court denied the application on August 24, 2006, finding that Coston had not met his burden of proof on the claim itself and that it was untimely filed under LA. CODE CRIM. PROC. ANN. art. 930.8.[31]

Coston sought further review of this order in the Louisiana Supreme Court by writ application submitted on September 7, 2006.[32] The Court granted the writ on December 15, 2006, for the sole purpose of transferring it to the Trial Court for consideration of the application for post-conviction relief filed March 31, 2003.[33]

---

[28] St. Rec. Vol. 9 of 9, 4 Cir. Order, 2004-KH-1778, 11/5/04.

[29] St. Rec. Vol. 2 of 9, Application for Post-Conviction Relief, 1/22/04 (dated 11/16/04).

[30] St. Rec. Vol. 9 of 9, 4 Cir. Writ Application, 2006-KH-1018, 8/1/06 (dated 7/26/06).

[31] St. Rec. Vol. 9 of 9, 4 Cir. Order, 2006-KH-1018, 8/24/06. Rule 930.8 governs the delay period for seeking post-conviction relief in the Louisiana courts.

[32] St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 06-KH-2358, 9/26/06 (postmark 9/8/06, dated 9/7/06).

[33] *State ex rel. Coston*, 944 So.2d at 1270; St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2006-KH-2358, 12/15/06.

Coston's appointed post-conviction counsel filed a supplement to the application for post-conviction relief on March 10, 2010, providing depth to the discussion of the ineffective assistance of counsel claim.[34] While the matter was pending with the Trial Court, on August 10, 2010, Coston was finally resentenced as a third felony offender on counts three and four per the remand order of the Louisiana Fourth Circuit on direct appeal in 2001.[35]

On order of the Trial Court, the State filed an opposition to Coston's application for post-conviction relief on January 10, 2011. After a full hearing held January 27, 2011, the Trial Court denied Coston's application for post-conviction relief finding no merit to the ineffective assistance of counsel claim.[36]

The Louisiana Fourth Circuit denied Coston's related writ application on April 26, 2011, because he raised the same issues which were addressed and decided against him on direct appeal, and found no error in the Trial Court denial of relief.[37]

Coston thereafter presented two writ applications to the Louisiana Supreme Court related to the Louisiana Fourth Circuit's ruling. The first was filed by the Louisiana Supreme Court on May 18, 2011, and denied by the Court without stated reasons on February 10, 2012.[38] The second writ

---

[34]St. Rec. Vol. 2 of 9, Supplemental Memorandum, 3/10/10.

[35]St. Rec. Vol. 1 of 9, Resentencing Minutes, 8/10/10.

[36]St. Rec. Vol. 1 of 9, Hearing Minutes, 1/27/11; St. Rec. Vol. 9 of 9, Post-Conviction Hearing Transcript, 1/27/11; St. Rec. Vol. 2 of 9, Trial Court Order, 1/27/11.

[37]St. Rec. Vol. 9 of 9, 4 Cir. Order, 2011-K-0460, 4/26/11; 4 Cir. Writ Application, 2011-K-0460, 4/7/11 (dated 5/24/11).

[38]The State failed to provide a copy of this writ application. The filing date was obtained from the clerk of the Louisiana Supreme Court. *State ex rel. Coston v. State*, 80 So.3d 485, 485 (La. 2012); St. Rec. Vol. 3 of 9, La. S. Ct. Order, 2011-KH-1032, 2/10/12.

application was submitted by Coston to the Louisiana Supreme Court on June 29, 2011, and also was denied by the Court without stated reasons on February 10, 2012.[39]

## II.     <u>Federal Petition</u>

On March 15, 2012, the clerk of this Court filed Coston's federal petition for habeas corpus relief in which he claims that he received ineffective assistance of counsel when his counsel (a) failed to seek severance of the charges against him and (b) failed to object to the prosecutor's remark about another crime during trial or seek an admonition or mistrial.[40]

The State filed a response in opposition to Coston's petition arguing that the petition was not timely filed.[41]  Alternatively, the State also argues that each of Coston's arguments are without merit.

Coston replied to the State's opposition reiterating the arguments made in support of his claim of ineffective assistance of counsel.[42]

---

[39]*State ex rel. Coston v. State*, 79 So.3d 1032, 1032 (La. 2012); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2011-KH-1465, 2/10/12; La. S. Ct. Writ Application, 11-KH-1465, 7/6/11 (postal metered 7/1/11, dated 6/29/11).

[40]Rec. Doc. No. 1, pp. 4, 16-21.

[41]Rec. Doc. No. 11.

[42]Rec. Doc. No. 13.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[43] applies to this petition, which is deemed filed in this Court on April 18, 2012.[44] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes exhaustion and has raised the untimeliness of Coston's petition as a defense. The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[45] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).

_____

[43]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[44]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Coston's federal habeas petition on March 15, 2012, when the petition was received with the filing fee. Coston dated his signature on the memorandum in support of the petition on February 28, 2012. This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

[45]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
   A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   B.    the date on which the impediment to filing an application created by State action in violation

In this case, the State contends that the writ application submitted by Coston to the Louisiana Supreme Court on June 29, 2011, was not timely filed under La. S.Ct. Rule X§5 and affords Coston no tolling of the AEDPA filing period. However, the State failed to consider Coston's timely filed writ application submitted to the Louisiana Supreme Court on May 18, 2011. This timely filing interrupted the AEDPA filing period and Coston's federal petition was timely filed. The State's limitations defense therefore is meritless. The Court will address the substance of Coston's ineffective assistance of counsel claim.

## IV.    <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g.*, *id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.     Ineffective Assistance of Counsel

Coston alleges that his counsel was ineffective when he failed to move to sever the charges against him and when he failed to object to the prosecutor's improper comment. The State argues that Coston is not entitled to relief on any of the arguments presented.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a

preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cullen*, 131 S.Ct.

at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through

the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

### A.    Failed to Move to Sever the Charges Against Him

Coston complains that his trial counsel failed to move for a severance of the multiple charges against him, which allowed the jury to hear evidence of each of the crimes and allowed them to assume his bad character. On direct appeal, Coston argued that the Trial Court erred in failing to sua sponte sever the offenses for trial. The Louisiana Fourth Circuit found that, under Louisiana law, the offenses were properly joined and that Coston failed to demonstrate prejudice arising from the joinder of the offenses for trial. The Trial Court also later denied relief on post-conviction review of the ineffective assistance of counsel claim noting that no errors had been found by the Louisiana Fourth Circuit when considering on appeal the joinder of the claims and the prosecutor's comment.

Under Louisiana law, "[T]he district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." LA. CODE CRIM. PROC. ANN. art. 61. The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense. *See State v. Brooks*, 541 So.2d 801, 810-11 (La. 1989) (citing LA. CODE CRIM. PROC. ANN. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); *State v. Burnett*, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1 Cir. 2008) (unpublished) (finding that the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing *State v. Joles*, 492 So.2d 490, 495 (La. 1986) (addressing joinder of theft counts)).

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under certain circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

LA. CODE CRIM. PROC. ANN. art. 493.

In addition, LA. CODE CRIM. PROC. ANN. art. 493.2 permits joinder where

> [O]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

LA. CODE CRIM. PROC. ANN. art. 495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In Coston's case, the Louisiana Fourth Circuit determined that there was no prejudice that might have prompted the Trial Court to sever the charges under LA. CODE CRIM. PROC. ANN. art. 495.1. In keeping with that finding, the Trial Court also denied post-conviction relief when it concluded that counsel's decision not to move for severance under the circumstances of the case was within the ambit of trial strategy.

The record discloses no requirement under state law that any count in the bill of information against Coston be severed and tried separately as a matter of law. Coston was charged with (and

18

eventually convicted of) four felonies in the bill of information.  A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor."  LA. REV. STAT. ANN. § 14:2.  Coston does not challenge the fact that each of the charges against him was triable by the same mode of trial and could be charged in the same bill of information.  LA. CODE CRIM. PROC. ANN. art. 782.

Furthermore, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime."  *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4 Cir. 1990).  In determining whether joinder of two or more offenses would result in prejudice, the Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Lewis*, 736 So.2d 1004, 1015 (La. App. 4 Cir. 1999) (citing, *e.g.*, *State v. Guccione*, 694 So.2d 1060, 1066 (La. App. 5 Cir. 1997)).  Having reviewed the record in its entirety, the Court agrees with the state courts and finds that Coston was not prejudiced simply because the offenses were tried together.

The record does not demonstrate that the jury was confused by the various counts or the evidence.  The fact that the jury considered the evidence and opted to find guilt of lesser included offenses on two of the charges reflects that the jury evaluated each of the crimes based on the evidence presented.  It also demonstrates that the jury was not hostile or prejudiced against Coston by the mere number of charges before them, and the number of charges was not used by the jury to

infer a criminal disposition. As correctly determined by the Louisiana Fourth Circuit, there was no showing of prejudice that would have warranted or required severance under Louisiana law.

Coston has not identified any error in the joinder of the charges against him that would have warranted objection by his counsel. Counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. *See Green v. Johnson*, 160 F.3d 1029, 1037-38 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Coston is not entitled to relief on this claim.

### B.     Failed to Object to the Prosecutor's Improper Comment

Coston alleges that his counsel was deficient for failing to object to, or move for admonishment or mistrial on, the prosecutor's remark during trial asserting a prejudicial inference that Coston had confessed to the robbery of Michael Triay.

Coston raised the underlying claim on direct appeal. The Louisiana Fourth Circuit resolved that there was no showing of prejudice because the prosecutor corrected the statement and successfully had the question stricken from the record. There was no mention of a particular victim or other characteristics of the crime that could have led the jury to believe that the prosecutor referenced inadmissable evidence.

The Trial Court also denied relief on the ineffective assistance of counsel claim on post-conviction review finding no reason for counsel to object once the misstatement was corrected and the question was stricken by the court.

A prosecutor's comment does not present a claim of constitutional magnitude unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). Due process requires reversal of a conviction only when the prosecutor's argument or comments "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted); *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988) (quotation omitted); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing, *e.g.*, *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985). "[It] is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (citations and quotations omitted).

In the Fifth Circuit, prosecutorial misconduct is considered under a two-step analysis. *United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000); *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. *Wise*, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." *Id.* A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994) (quoting *Jones*).

Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." *Rogers*, 848 F.2d at 609 (footnote and citations omitted).

Coston has not established unconstitutional conduct by the prosecutor to which his counsel should have objected. Prior to trial, the Trial Court granted the State's request to read portions of Coston's statement to police, redacted on defense motion to exclude matters for which he was not arrested.[46] During trial, the prosecutor, Kate Bartholomew, read questions from the transcript of the statement and had Detective Kuhn read Coston's answers to those questions. At one point, the following exchange occurred:[47]

> Q.  Question: "I would like to ask you about a robbery that occurred on Sunday, October 11, 1998, at approximately 4 a.m." I'm sorry. I misread that. This should be at 4 p.m., I believe.
>
> A.  I lost the page you were on.
>
> Q.  Can I strike that, Your Honor?
>
> BY THE COURT:
>     Please.

From that point, the prosecutor resumed asking questions about the Farkouh burglary that occurred late at night on October 11, 1998.[48]

Under a broad reading, Coston argues that the prosecutor's statement must have been a reference to the Michael Triay robbery, which was the incident earlier on the day of October 11,

---

[46] St. Rec. Vol. 4 of 9, Trial Transcript, p. 2, 1/12/00.

[47] *Id.*, p. 70.

[48] Rec. Doc. No. 11, p. 33.

1998 and to which he had not confessed. As a result, the prosecutor's comment could have led the jury to believe that he confessed to the Triay robbery.

Coston, however, has failed to allege or demonstrate that the jury's verdict was effected by the mistake made by the prosecutor. Her comment was announced as a misstatement of what she was reading. She also asked that her comment be wholly stricken from the record, a request that was granted by the Court. The questioning continued on with the descriptions of the burglary, the only such crime charged and which was properly discussed under the Trial Court's ruling.

Also, the prosecutor's error was not pronounced or persistent at trial. It was one brief, incidental error which was quickly corrected. It is conceivable that any objection by counsel would have drawn more attention to the mistake than was necessary. Counsel's decision not to object was a sound strategic call.

Coston also has not shown that the statement had an impact on the verdict. He does not challenge the sufficiency of the evidence to support the verdict or suggest that the evidence was insubstantial to have been overwhelmed by the comment. Without such a showing, he has not established that the comment amounted to a constitutional error by the prosecutor.

The prosecutor's misstatement was not prejudicial and did not call for an objection from Coston's counsel. Counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. *Green*, 160 F.3d at 1037. The state courts' denial of relief on these claims was not contrary to, or an unreasonable application of, *Strickland*. Coston is not entitled to relief on this claim.

## VI.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Stanley Coston's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[49]

New Orleans, Louisiana, this 2nd day of October, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[49]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.